UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHAEL SNOW,

      Plaintiff,

v.                         CASE NO.: 2:04-cv-00515-VMC-SPC

DIRECTV, INC., a California
Corporation; STUMP, STOREY,
CALLAHAN, DIETRICH &
SPEARS, P.A., a Florida Professional
Association; YARMUTH, WILSDON
& CALFO, PLLC, a Washington
Professional Limited Liability
Company; and JOHN DOES 1-25,

      Defendants.

_____/

## DEFENDANT YARMUTH WILSDON AND CALFO PLLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2)

## I.    INTRODUCTION

Plaintiff Michael Snow initiated this action alleging that DIRECTV, Inc. ("DIRECTV"), and two of its outside law firms, Stump, Storey, Callahan, Dietrich & Spears, P.A. ("Stump") and Yarmuth Wilsdon & Calfo PLLC ("Yarmuth") (collectively "Defendants") violated the Stored Communications Act, 18 U.S.C. § 2701, by accessing a website owned and operated by Plaintiff without or in excess of authorization, and thereby accessing communications in electronic storage as defined in the Act. Defendant Yarmuth now independently moves, pursuant to Rule 12(b)(2) of the Federal Rules of Civil

Procedure, to dismiss Plaintiff's Complaint on the ground that Yarmuth is not subject to personal jurisdiction in Florida.

The undisputed facts of this case establish that Yarmuth lacks sufficient contacts with Florida to justify the exercise of personal jurisdiction over it under either the Florida long-arm statute or the federal Due Process Clause. First, the allegedly tortious conduct undertaken by Yarmuth -- "e-trespassing" on Plaintiff's website -- occurred exclusively in the states of Washington and California, not in Florida. Specifically, Yarmuth's alleged trespass was committed by a Yarmuth staff member in Washington, using computers located in Washington, against Plaintiff's website located in California. Second, Yarmuth does not have sufficient generalized contacts with Florida to subject it to the jurisdiction of this court. Under similar circumstances, numerous courts have recognized that sporadic and isolated contacts by a nonresident law firm with the forum state are insufficient to confer jurisdiction.

## II.   STATEMENT OF FACTS

### A.   <u>Case History</u>

Plaintiff was formerly a defendant in an anti-piracy action brought in this Court by DIRECTV (the "Underlying Action"). DIRECTV was represented in the Underlying Action exclusively by two Florida law firms. (*See* Civil Docket for *DIRECTV, Inc. v. Arnold, et al.*, Case No. 2:03-cv-00167-JES, attached hereto as Exhibit A). Snow was severed as a defendant from this action (*see* July 29, 2003 Order, No. 2:03-cv-00167-JES-SPC, attached hereto as Exhibit B), and later dismissed without prejudice by DIRECTV (*see* Aug. 4, 2004 Order of Dismissal, *DIRECTV, Inc. v. Snow*, No. 2:03-cv-00394-JES-SPC, attached hereto as Exhibit C).

- 2 -

Plaintiff filed the instant action on October 20, 2004 alleging, in relevant part, that Yarmuth, on DIRECTV's behalf, committed acts of "e-trespass" against Plaintiff on two days in early June 2004 by visiting Plaintiff's publicly accessible website in disregard of its Terms of Use which prohibited access to representatives, agents, suppliers or relatives of "DIRECTV, Dish Network, RIAA or any other Corporation seeking to sue individuals for alleged pirate acts." (Compl. ¶¶ 16, 58).

**B.    The Parties**

Yarmuth is a Seattle, Washington-based law firm that provides comprehensive legal services to individuals and corporate clients throughout the United States, though the great majority of Yarmuth's clients and cases are located in the Pacific Northwest and California. (Dec. 16, 2004 Affidavit of Scott Wilsdon ("Wilsdon Aff.") ¶¶ 3-4, attached hereto as Ex. D).  Since 1995, Yarmuth has represented DIRECTV, a California corporation with its principal place of business in California, in litigation between DIRECTV and various individuals and corporations that are engaged in the unlawful "piracy" of DIRECTV's satellite television signal. (*Id.* ¶ 5).  As part of that representation, Yarmuth's attorneys and staff investigate suspected "pirates," often by monitoring Internet websites dedicated to enabling "pirates" to buy and sell piracy-related computer hardware and software and/or to "post" piracy-related messages for viewing by others. (*Id.* ¶ 6).

Plaintiff is the owner and operator of the SCE website. (Compl. ¶ 1).  According to Plaintiff, he created the SCE website in October, 2003 in response to "questionable legal action from many Corporations [including DIRECTV] against the Free Citizens of the United States of America." (*Id.* ¶¶ 13, 15).  After Plaintiff created the SCE website, he entered into an agreement with a "web-hosting" company called globat.com ("Globat") to

"host" the SCE website. (*Id.* ¶¶ 25-26). Pursuant to that Agreement, Globat maintained the SCE website on its web servers at facilities maintained by Globat. (*Id.* ¶ 27). Globat's servers and facilities are located exclusively in Los Angeles, California. (*See* Globat Web page located at www.globat.com/netstatus, attached hereto as Exhibit E) ("Our primary equipment is housed . . . at our main data center, Equinox, located in downtown Los Angeles.... We also maintain a presence at a second data center in Marina del Rey, California).

### C. Yarmuth's Florida Contacts

Yarmuth is a Washington law firm with its sole office and principal place of business in Seattle, Washington. (Wilsdon Aff. ¶ 3). Since the firm's inception, Yarmuth has never maintained any physical presence (such as an office, telephone lines, mailing address, or agent for service of process) in Florida. (*Id.* ¶ 11). Of Yarmuth's eighteen partners and associates, none have been members of the Bar of Florida or residents of Florida during their employment with Yarmuth. (*Id.*). Yarmuth does not maintain any assets (such as property or bank accounts) in Florida. (*Id.*). Yarmuth has never solicited any clients in Florida either by directing advertisements into Florida, or by engaging in "client pitches" to Florida companies or individuals. (*Id.* ¶ 12).

The entirety of Yarmuth's business activities in Florida throughout the firm's ten-year history have consisted of the following. First, Yarmuth attorneys have represented four Florida-based clients, all of whom were referred to Yarmuth without any solicitation by Yarmuth. (*Id.* ¶ 9). Yarmuth's representation of three of these clients was at all times limited to specific cases pending in Washington Courts, and those three representations have now concluded. (*Id.*). The fourth representation is ongoing in a pre-litigation posture,

but relates exclusively to events taking place in Washington. (*Id.*). Yarmuth has never represented any Florida clients in actions pending in Florida courts, nor have Yarmuth attorneys been required to travel to Florida for purposes of representing these clients. (*Id.* ¶ 10).

Second, Yarmuth partner Scott Wilsdon, with the occasional assistance of Yarmuth's associates and staff, has represented DIRECTV in three piracy-related litigations in Florida. (*Id.* ¶ 7). In these cases, Wilsdon and/or his two associates have been admitted to the respective courts *pro hac vice* an aggregate of four times, and represented DIRECTV in conjunction with local Florida counsel each time. (*Id.*). Yarmuth's representation of DIRECTV in two of the three cases ended in 2003 and 2004, respectively, while the third matter is ongoing. (*Id.*). Additionally, in 2001 and 2002, Yarmuth conducted pre-litigation settlement negotiations on DIRECTV's behalf with an unknown number of suspected pirates who were residents of Florida. (*Id.* ¶ 8). Yarmuth was not physically present in Florida for any of these negotiations.

No Yarmuth members or associates have represented DIRECTV or any other clients in Florida in any other matters. (*Id.* ¶ 11). Yarmuth has generated substantially less than one percent of its total revenue from its representation of its Florida clients or of DIRECTV in Florida cases. (*Id.* ¶ 13).

### D.     Yarmuth's Conduct with Regard to the SCE Website.

Plaintiff alleges that Yarmuth exceeded its authorization to access the SCE website on five occasions over a two-day period in early-June 2004. (Compl. ¶ 58). Though Yarmuth denies that it "exceeded its authorization" to access the SCE website, Yarmuth acknowledges that its legal assistant, Michael Houck, visited the Yarmuth site in early June

2004 from his computer in Yarmuth's Seattle office. (Dec. 16, 2004 Affidavit of Michael Houck ("Houck Aff.") ¶¶ 2-4, attached hereto as Ex. F). These visits by Houck to the SCE website serve as the basis for Plaintiff's complaint.

## III.   ARGUMENT

The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis:  First, courts must consider the jurisdictional question under the state long-arm statute.  *See Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  If there is no basis for jurisdiction under the state statute, the case must be dismissed.  *Id.*  If, however, there is a basis for jurisdiction under the state statute, personal jurisdiction will be appropriate only if defendant had sufficient "minimum contacts" with the forum state to satisfy the federal Due Process Clause.  *Id.*  Only if both prongs of the analysis are satisfied may a court exercise personal jurisdiction over a nonresident defendant.  *Id.*

In the present case there can be no dispute that the acts allegedly committed by Yarmuth that gave rise to Plaintiff's claims occurred outside of Florida, and that Yarmuth's overall contacts with Florida have been sporadic and isolated.  In similar circumstances, courts have routinely and consistently recognized that nonresident law firms are not subject to personal jurisdiction in the forum state.  *See generally Hill v. Sidley & Austin*, 762 F. Supp 931, 935 (S.D. Fla. 1991); *see also Reliance Steel Prods. Co v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 589 (3d Cir. 1982); *Ziarno v. Gardner Carton & Douglas*, 2004 WL 838131 at *2 (E.D. Pa. Apr. 8, 2004); *First Trust Nat. Ass'n v. Jones, Walker, Waechter, Poitenvent, Carrere & Denegre*, 996 F.Supp. 585, 590 (S.D.Miss. 1998); *Hart v. Skadden, Arps, Slate, Meagher & Flom*, 1991 WL 355061 at *4 (M.D.N.C. Aug. 5, 1991)

## A.     Florida's Long-Arm Statute

Florida's "long-arm" statute permits courts to exercise personal jurisdiction over nonresident defendants only in certain expressly enumerated situations. *See* Fla. Stat. § 48.193. The statute provides that non-resident corporate defendants are subject to jurisdiction in Florida for any cause of action arising from, *inter alia*, the defendant's: (i) doing business in Florida; or (ii) committing a tortious act within Florida. *Id.* § 48.193(1)(a),(b)). Alternatively, jurisdiction can be established by a showing that the defendant "engaged in substantial and not isolated activity within this state," whether or not the plaintiff's claims arise from that activity. *Id.* § 48.193(2).[1] Plaintiff cannot establish jurisdiction over Yarmuth under any of these statutory provisions.

### 1.     Plaintiff's Claims Did Not Arise From Business Activities in Florida.

For Plaintiff to establish personal jurisdiction over Yarmuth under Fla. Stat. § 48.193(1)(a), Plaintiff must show that its claims against Yarmuth arose from a general course of business activity *undertaken in Florida*. *Id.* § 48.193(1)(a); *Foster, Pepper & Rivera v. Hansard,* 611 So. 2d 581, 582 (Fla. 1st Dist. Ct. App. 1992) (citing *Dinsmore v. Martin Blumenthal Assoc., Inc.,* 314 So. 2d 458, 460 (Fla. 1975)). Plaintiff can make no such showing here because the alleged activities that serve as the basis of Plaintiff's claims

---

[1] The Florida long arm statute further allows for jurisdiction in the following instances, none of which are plausibly relevant to this matter: (i) defendant's owning a mortgage or other lien on real property in Florida (§ 48.193(1)(c)); (ii) defendant's contracting to insure persons, property or risk in Florida (§ 48.193(1)(d)); (iii) in proceedings for alimony, child support, or division of property in connection with an action to dissolve a marriage (§ 48.193(1)(e)); (iv) defendant's causing plaintiff personal injury or property damage within Florida while engaged in soliciting business or conducting service activities in Florida (§ 48.193(1)(f)); (v) defendant's breach of a contract in Florida (§ 48.193(1)(g)); and (vi) in paternity proceedings (§ 48.193(1)(h)) .

arose exclusively from Yarmuth's activities in connection with Washington and California. Indeed, Yarmuth had *no* contacts with Florida relating to Plaintiff or the instant action.

The sole basis for Plaintiff's Complaint against Yarmuth is the allegation that on five occasions in June 2004 Yarmuth violated the Stored Communications Act by visiting the SCE website in disregard of Plaintiff's Terms of Use. (Compl. ¶¶ 16, 58). Even assuming for purposes of this Motion that these allegations are true, this Court may not exercise personal jurisdiction over Yarmuth because the acts which constituted the alleged tort were committed exclusively in Washington and California, not Florida. *See Georgia Insurers Insolvency Pool v. Brewer,* 602 So. 2d 1264, 1267 (Fla. 1992) (dismissing complaint pursuant to Fla. Stat. § 48.193(1)(a) because defendant's business activities constituting alleged tortious activities were not committed in Florida).

Yarmuth's alleged "e-trespasses" on June 2 and 7, 2004 were performed from Yarmuth's offices in Seattle, Washington, resulting in electronic communications being sent to Globat's servers in California. (Houck Aff. ¶ 4; Exhibit E, at 1). Thus, Yarmuth did not physically enter or cause any electronic signal or communication sent by it to enter Florida. *See Merkin v. PCA Health Plans of Florida, Inc.,* 855 So. 2d 137, 141 (Fla. 3d Dist. Ct. App. 2003) (a tort is deemed to occur in the forum in which the alleged tortfeasor performed the tortious act and, if that tortious act included a written, oral, or electronic communication, in the forum to which that communication was sent).

### 2. Plaintiff's Claims Did Not Arise From Yarmuth's Alleged Commission of Tortious Acts in Florida.

Similarly, Plaintiff cannot establish jurisdiction under Fla. Stat. § 48.193(1)(b) because the alleged actions undertaken by Yarmuth did not occur in this State and were not directed at Florida. *Id.* § 48.193(1)(b) (allowing personal jurisdiction for tortious acts

committed "within this state"); *Execu-Tech Bus. Sys. Inc. v. New Oji Paper Co. Ltd.,* 752 So. 2d 582, 584 (Fla. 2000) (personal jurisdiction over a foreign corporation under Fla. Stat. § 48.193(1)(b) requires the foreign corporation to have "commit[ed] a 'tortious act' on Florida soil").

Though Florida courts recognize that a nonresident-defendant's actual physical presence within Florida is not required for jurisdiction, acts undertaken outside of Florida can only serve to establish the basis for personal jurisdiction if they are purposefully directed "into Florida." *See Merkin,* 855 So. 2d at 141. In particular, a plaintiff who endeavors to establish jurisdiction based on non-forum state electronic communications must show that those communications were directed into Florida. *See id.* (citing *Carlyle v. Palm Beach Polo Holdings, Inc.,* 842 So. 2d 1013, 1017 (Fla. 4th Dist. Ct. App. 2003)). Here, the allegedly tortious acts of "e-trespass" committed by Yarmuth were not directed into Florida. (Houck Aff. ¶ 1; Exhibit E, at 1). Personal jurisdiction is, therefore, not authorized under § 48.193(1)(b).

### 3. Yarmuth Is Engaged In Only Isolated and Sporadic Activities In Florida.

Yarmuth is not subject to personal jurisdiction under Fla. Stat. § 48.193(2) because its contacts with Florida are, at most, isolated and sporadic. Section 48.193(2) provides:

> A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity. *Id.*

This provision is a "general jurisdiction" statute that "does not require connexity between a defendant's activities and the cause of action." *Woods v. Nova Cos. Belize Ltd.,* 739 So. 2d 617, 620 (Fla. 4th Dist. Ct. App. 1999). The provision does require, however,

that the defendant be shown to be engaged in "continuous and systematic general business contacts" with Florida. *Achievers Unlimited, Inc. v. Nutri Herb, Inc.,* 710 So. 2d 716, 720 (Fla. 4th Dist. Ct. App. 1998). Accordingly, "sporadic activities or visits" will not suffice to establish personal jurisdiction. *Price v. Point Marine, Inc.,* 610 So. 2d 1339, 1341 (Fla. 1st Dist. Ct. App. 1992).

Generally, the determinative factors in deciding whether a nonresident corporation has sufficient generalized contacts with Florida so as to satisfy the state long-arm statute are whether the defendant 1) maintains a physical presence in Florida; and 2) derives a significant portion of their revenues from its Florida contacts. *See, e.g. Milberg Factors, Inc. v. Greenbaum,* 585 So. 2d 1089, 1091 (Fla. 3d Dist. Ct. App. 1991) (holding that New York financial institution was not subject to personal jurisdiction in Florida where firm had contracts with five Florida clients over ten years and those clients represented less than two percent of defendant's revenues, even where defendant filed numerous UCC financing statements in Florida and obtained multiple judgments there); *Powercerv Technologies Corp. v. Ovid Technologies, Inc.,* 993 F. Supp. 1467, 1470 (M.D. Fla. 1998) (ruling that nonresident corporation was not subject to personal jurisdiction in Florida notwithstanding its maintenance of Florida customers from which it derived substantial income where defendant had no employees, officers, or property in Florida); *Ranger Nationwide, Inc. v. Cook,* 519 So. 2d 1087, 1089 (Fla. 3d Dist. Ct. App. 1988) (ruling personal jurisdiction inappropriate under Florida long-arm statute where defendant's ongoing activities consisted of several isolated trucking trips into Florida and company's use of Florida's highways, from which it derived less than one percent of revenues); *Structural Panels v. Texas Aluminum Indus.,* 814 F. Supp. 1058, 1066 (M.D. Fla. 1993) (finding defendant's Florida sales,

constituting a small percentage of its overall sales of a product unrelated to plaintiff's suit, insufficient to confer general jurisdiction under section 48.193(2)).

Here, the entirety of Yarmuth's ongoing contacts with the forum state include Yarmuth's representation of one Florida client in a Washington-based dispute, and of DIRECTV in one Florida proceeding. (Wilsdon Aff. ¶ 9). Moreover, throughout the firm's ten-year history Yarmuth's contacts with Florida have been limited to its representation of four Florida-based clients (each in disputes in Washington), representation of DIRECTV in three Florida matters, and engagement in pre-litigation settlement efforts with an unknown number of suspected pirates. (*Id.* ¶ 7-11). Yarmuth has generated substantially less than one percent of its overall revenue from these representations. (*Id.* ¶ 13). Yarmuth maintains *no* physical presence in Florida and has derived substantially less than one percent of its overall revenues from Florida clients or from its representation of DIRECTV in Florida. (Wilson Aff. ¶ 11, 13). Such contacts do not, as a matter of law, expose Yarmuth to jurisdiction in Florida under Fla. Stat. § 48.193(2). As such, Plaintiff's Complaint must be dismissed as to Yarmuth. *See Madara,* 916 F.2d at 1514 (stating that a plaintiff's failure to establish jurisdiction under any provision of the state long-arm statute must result in a dismissal of the case).

Furthermore, the "substantial and not isolated activity" requirement of the long-arm statute has been recognized by Florida courts as the functional equivalent of the "continuous and systematic contact" requirement for general jurisdiction under the Fourteenth Amendment's Due Process Clause. *Woods.,* 739 So. 2d at 620. Several federal courts have recognized that general jurisdiction may not be conferred under the Fourteenth Amendment

on out-of-state law firms under circumstances similar to Yarmuth's. *See* Section 3.B.2 at pp. 13-14.

### B.    The Due Process Clause

Even if Plaintiff could somehow establish that Yarmuth is subject to jurisdiction under Florida's long-arm statute, the exercise of jurisdiction would nevertheless offend the Fourteenth Amendment's Due Process Clause. *See id.* at 1515 (recognizing that to properly exercise jurisdiction, plaintiff must establish that defendant has the requisite contacts with Florida so as to satisfy both the state long-arm statute and the federal Due Process clause).

The question of whether the assertion of personal jurisdiction over a nonresident defendant comports with Due Process rests with a determination of whether the defendant had "minimum contacts" with the forum state. *Williams Elec. Co. v. Honeywell, Inc.,* 854 F.2d 389, 391 (11th Cir. 1988) (quoting *International Shoe,* 326 U.S. at 316). Here, as with the long-arm statute analysis, this Court may not exercise personal jurisdiction over Yarmuth because Yarmuth's allegedly tortious conduct that gave rise to Plaintiff's complaint did not take place in Florida, and because Yarmuth lacks "continuous and systematic" contacts with this State.

Like the Florida long-arm statute, the Due Process analysis recognizes two bases for personal jurisdiction: 1) specific personal jurisdiction, founded on a party's contacts with the forum state that are related to the cause of action; and 2) general personal jurisdiction, arising from a party's contacts with the forum state that are unrelated to the litigation. *See Helicopteros_Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 nn. 8, 9 (1984).

### 1. Specific Personal Jurisdiction

For this Court to exercise specific personal jurisdiction over Yarmuth it must determine that Yarmuth's contacts with Florida are related, or have given rise, to Plaintiff's cause of action. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985); *Madara,* 916 F.2d at 1516. As this Court has previously recognized, such a finding requires that a nonresident business "reaches beyond" its state's boundaries to conduct business with residents in a foreign state and, based on that conduct, has committed some act that gave rise to plaintiff's cause of action. *Miller v._Berman,* 289 F. Supp. 2d 1327, 1335 (2003). Only by directing its business efforts into the forum state will a business "reasonably anticipate being haled into court there." *Id.*

As such, the previous analysis under the Florida long-arm statute suffices to defeat specific jurisdiction under the Due Process clause. Plaintiff alleges only that Yarmuth "visited" the SCE website on two days in June 2004. (Compl. ¶ 58). In committing those acts, Yarmuth's legal assistant neither entered Florida nor "reached beyond" Washington's boundaries to conduct business with Florida residents. (Houck Aff. ¶ 4). In sum, there is absolutely no connection between Yarmuth and Florida relating to the allegations in Plaintiff's Complaint.

### 2. General Personal Jurisdiction

Similarly, Yarmuth is not subject to general personal jurisdiction in Florida under the Fourteenth Amendment because it has not had "continuous and systematic general business contacts" with Florida. *See Consolidated_Development Corp. v. Sherritt, Inc.,* 216 F.3d 1286, 1292 (11th Cir. 2000). In *Hill v. Sidley & Austin*, 762 F. Supp. 931 (S.D. Fla. 1991), the district court ruled that the defendant -- a law firm with offices in eight states, the

District of Columbia, and three foreign countries -- lacked sufficient minimum contacts with Florida to support the exercise of personal jurisdiction in this State. *Id.* at 932, 935. Though defendant admitted that it occasionally performed legal services in Florida, those services were found to be "*sporadic*, not regular or continual." *Id.* at 935 (emphasis in original). Of particular import to the district court was Sidley & Austin's lack of any physical presence in Florida, including that defendant had "no office, telephone listing, mailing address, business agent, bank account, property or assets in Florida, and that they do not solicit business in Florida." *Id.*

This holding is consistent with rulings from other jurisdictions. *See Reliance Steel Prods._Co*, 675 F.2d at 589 (ruling firm's advertisement into forum and receipt of forum-state clients from unsolicited referrals did not establish a "significant business relationship" between firm and forum state); *First Trust Nat. Ass'n*, 996 F. Supp. at 589 (finding no "systematic and continuous" contacts despite occasional representation of forum residents and that some firm lawyers were members of state bar, because firm had no offices, property or agent in forum-state, was not qualified to do business there, and did not advertise or solicit business there); *Ziarno*, 2004 WL 838131 at *2 (finding no personal jurisdiction over law firm even though firm's attorneys represented clients in forum-state courts); *Hart*, 1991 WL 355061 at *2 (dismissing firm despite representation of forum-state clients in forum-state courts because firm did not maintain an office in forum state, no employees or firm partners lived or owned property there, and firm did not solicit business in forum state).

As with the defendants in the aforementioned cases, Yarmuth has no physical presence in Florida, does not possess an office telephone listing, mailing address, business

agent, bank account, property or assets in Florida, and does not solicit business in Florida. (Wilsdon Aff. ¶¶ 11, 12). Yarmuth only infrequently represents Florida clients or practices in Florida courts, none of its attorneys are members of the Florida Bar, and it does not otherwise direct its activities towards Florida. (*Id.* ¶¶ 7-9). If Sidley & Austin, with its hundreds of lawyers in twelve offices around the world can be held not to have sufficient general contacts with Florida, it is inconceivable that a twenty-attorney, single-office firm in Seattle can be found to have such contacts.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Complaint against Yarmuth should be dismissed.

December 17, 2004

Respectfully submitted,

/s/  Marc J. Zwillinger
Marc J. Zwillinger
Christian S. Genetski
Jason Beckerman
Sonnenschein Nath & Rosenthal LLP
1301 K Street NW
East Tower, Suite 600
Washington DC 20005
(202) 408-6400 (Telephone)
(202) 408-6399 (Facsimile)

Counsel for Defendants
YARMUTH, WILSDON & CALFO PLLC

/s/  Michael J. Corso, Esq.
Michael J. Corso, Esq.
Florida Bar No. 0228729
Bernard J. O'Donnell
Florida Bar No. 0387940
Henderson, Franklin, Starnes & Holt, P.A.
1715 Monroe Street
Post Office Box 280
(239) 344-4121 (Telephone)
(239) 344-4100 (Facsimile)

Counsel for Defendants
YARMUTH, WILSDON & CALFO, PLLC

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2004, I caused a true and correct copy of the foregoing Defendant Yarmuth Wilsdon and Calfo PLLC's Memorandum of Law in Support of Its Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2) to be served, via Federal Express, upon the following counsel for Plaintiff Michael Snow:

> Albert A. Zakarian
> Law Offices of Albert A. Zakarian
> 2024 W. Cleveland Street
> Tampa, FL 33606
>
> Robert S. Apgood
> Law Offices of Robert S. Apgood
> 500 Union Street, Ste. 510
> Seattle, WA 98101

/s/ Marc J. Zwillinger
Marc J. Zwillinger

# EXHIBIT A

# U.S. District Court
## Middle District of Florida (Ft. Myers)
### CIVIL DOCKET FOR CASE #: 2:03-cv-00167-JES

Directv, Inc. v. Arnold, et al
Assigned to: Judge John E. Steele
Demand: $0
Lead Docket: 2:03-cv-00167-JES
Case in other court:
Cause: 47:0605 Federal Communications Act

Date Filed: 04/14/2003
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Federal Question

**Plaintiff**

------------------------

**Directv, Inc.,** *a California corporation*          represented by

**Michael T. Sheridan**
Stump, Storey, Callahan, Dietrich &
Spears, P.A.
37 N. Orange Ave., Suite 200
P.O. Box 3388
Orlando, FL 32802-3388
407/425-2571
Fax: 407/650-2967
Email: mts@stumplaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott C. Roberts**
ShuffieldLowman
1000 Legion Place
Suite 1700
Orlando, FL 32801
407/425-2571
Email: sroberts@shuffieldlowman.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan E. Rose**
Stump, Storey, Callahan, Dietrich &
Spears, P.A.
37 N. Orange Ave., Suite 200
Winter Park, FL 32789
407/425-2571
Fax: 407/843-1678
Email: JER@stumplaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

------------------------

**Nancy Bates**
*TERMINATED: 07/29/2003*

**Thomas Hauser**
*TERMINATED: 05/07/2003*

**Darrell Shivley**
*TERMINATED: 07/29/2003*

**Mike Snow**
*TERMINATED: 07/29/2003*

**Gwen Kim Arnold**                    represented by  **Gwen Kim Arnold**
                                       306 Cleveland Avenue North
                                       Lehigh Acres, FL 33972
                                       PRO SE

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 04/14/2003 | 1 | COMPLAINT for compensatory, statutory and other damages, and for injunctive relief filed. Filing fee $150.00 Receipt #F003625. (drn) (Entered: 04/14/2003) |
| 04/14/2003 |   | MAGISTRATE JUDGE CASE ASSIGNMENT Magistrate assigned: Douglas N. Frazier (drn) (Entered: 04/14/2003) |
| 04/14/2003 |   | SUMMONS(ES) issued for Gwen Kim Arnold, Nancy Bates, Thomas Hauser, Darrell Shivley and Mike Snow. (drn) (Entered: 04/14/2003) |
| 04/15/2003 | 2 | NOTICE of designation under Local Rule 3.05 - TRACK 2. RELATED CASE ORDER (ctc) (bjt) (Entered: 04/15/2003) |
| 04/15/2003 | 3 | INTERESTED PERSONS ORDER ( Signed by Judge John E. Steele ) ctc (bjt) (Entered: 04/15/2003) |
| 04/22/2003 |   | MAGISTRATE JUDGE CASE ASSIGNMENT Magistrate assigned: Sheri Polster Chappell (sll) (Entered: 04/22/2003) |
| 04/23/2003 | 4 | NOTICE to counsel of new case number and judge assignment (signed by deputy clerk) ctc (bjt) (Entered: 04/23/2003) |
| 04/25/2003 | 5 | NOTICE by Directv, Inc. of pendency of other actions re: order of compliance to local rule (bjt) (Entered: 04/25/2003) |
| 04/25/2003 | 6 | CERTIFICATE OF COMPLIANCE by Directv, Inc. Re: [3-1] order (bjt) (Entered: 04/25/2003) |
| 05/05/2003 | 7 | NOTICE of voluntary dismissal by Directv, Inc. as to defendant |

| | | Thomas Hauser (bjt) (Entered: 05/05/2003) |
|---|---|---|
| 05/07/2003 | 8 | ORDER granting [7-1] notice. This case is dismissed without prejudice as to defendant Hauser. The Clerk shall withhold judgment until the conclusion of this case. ( Signed by Judge John E. Steele ) ctc (bjt) (Entered: 05/07/2003) |
| 05/12/2003 | 9 | ANSWER to [1-1] complaint by Gwen Kim Arnold (bjt) (Entered: 05/12/2003) |
| 05/12/2003 | 9 | MOTION by Gwen Kim Arnold to dismiss complaint (bjt) (Entered: 05/12/2003) |
| 05/12/2003 | 10 | INTERESTED PERSONS ORDER ( Signed by Judge John E. Steele ) ctc (bjt) (Entered: 05/12/2003) |
| 05/15/2003 | 11 | WAIVER OF SERVICE returned executed as to Darrell Shivley on 4/29/03 Answer due on 6/30/03 for Darrell Shivley (bjt) (Entered: 05/15/2003) |
| 05/16/2003 | 12 | CERTIFICATE OF SERVICE of [2-1] track 2 notice by Directv, Inc. (bjt) (Entered: 05/19/2003) |
| 05/16/2003 | 13 | RETURN of service executed as to Gwen Kim Arnold on 4/26/03 Answer due on 5/16/03 for Gwen Kim Arnold (bjt) (Entered: 05/19/2003) |
| 05/16/2003 | 14 | RETURN of service executed as to Darrell Shivley on 4/29/03 Answer due on 5/19/03 for Darrell Shivley (bjt) (Entered: 05/19/2003) |
| 05/16/2003 | 15 | RETURN of service executed as to Nancy Bates on 4/28/03 Answer due on 5/19/03 for Nancy Bates (bjt) (Entered: 05/19/2003) |
| 05/16/2003 | 16 | NOTICE of filing by Directv, Inc. (bjt) (Entered: 05/19/2003) |
| 05/22/2003 | 17 | CERTIFICATE OF COMPLIANCE by Gwen Kim Arnold Re: [10-1] order (bjt) (Entered: 05/23/2003) |
| 06/17/2003 | 18 | NOTICE by Gwen Kim Arnold of pendency of other actions re: order of compliance to local rule (sll) (Entered: 06/19/2003) |
| 06/17/2003 | 19 | NOTICE by Gwen Kim Arnold of change of address for pro se party (sll) (Entered: 06/19/2003) |
| 06/18/2003 | 20 | RESPONSE by Directv, Inc. in opposition to [9-1] motion to dismiss complaint (sll) (Entered: 06/19/2003) |

| 06/23/2003 | 21 | CERTIFICATE OF SERVICE of [2-1] track 2 notice by Directv, Inc. (aa) (Entered: 06/25/2003) |
|---|---|---|
| 06/23/2003 | 22 | NOTICE of filing return of service as to Mike Snow by Directv, Inc. (aa) (Entered: 06/25/2003) |
| 06/23/2003 | 23 | RETURN of service executed as to Mike Snow on 6/3/03 Answer due on 6/23/03 for Mike Snow (aa) Modified on 08/25/2003 (Entered: 06/25/2003) |
| 06/26/2003 | 24 | ANSWER to [1-1] complaint by Mike Snow (aa) (Entered: 06/27/2003) |
| 06/27/2003 | 25 | INTERSTED PERSONS ORDER as to Mike Snow (Signed by Judge John E. Steele) ctc (aa) (Entered: 06/27/2003) |
| 06/27/2003 | 26 | MOTION by Directv, Inc. for entry of clerk's default as to Mike Snow referred to Magistrate Judge Sheri P. Chappell (aa) (Entered: 06/27/2003) |
| 06/27/2003 | 27 | AFFIDAVIT of Michael T. Sheridan by Directv, Inc. Re: [26-1] motion for entry of clerk's default as to Mike Snow (aa) (Entered: 06/27/2003) |
| 07/03/2003 | 28 | ORDER denying [26-1] motion for entry of clerk's default as to Mike Snow ( Signed by Magistrate Judge Douglas N. Frazier ) ctc (kma) (Entered: 07/03/2003) |
| 07/07/2003 | 29 | NOTICE of filing case management report by Directv, Inc. (aa) (Entered: 07/08/2003) |
| 07/07/2003 | 30 | CASE MANAGEMENT REPORT (Stricken per Court order document #44) (aa) Modified on 10/07/2003 (Entered: 07/08/2003) |
| 07/11/2003 | 31 | ORDER TO SHOW cause for why this case should not be dismissed without prejudice as to defendants Nacy Bates; Thomas Hauser, Darrell Shivley and Mike Snow for improper joinder: Response due on 7/22/03 for Directv, Inc. (Signed by Judge John E. Steele) ctc (aa) (Entered: 07/11/2003) |
| 07/16/2003 | 32 | ORDER TO SHOW cause for why sanctions should not be imposed for failure to comply with the order of this court: Response due on 7/28/03 for Mike Snow ( Signed by Magistrate Judge Sheri P. Chappell ) ctc (aa) (Entered: 07/16/2003) |
| 07/18/2003 | 33 | RESPONSE to show cause order filed by plaintiff Directv, Inc. (sll) (Entered: 07/18/2003) |

| 07/25/2003 | 34 | MOTION by Gwen Kim Arnold to dismiss case (kma) (Entered: 07/29/2003) |
|---|---|---|
| 07/28/2003 | 35 | CERTIFICATE OF COMPLIANCE by Mike Snow Re: [25-1] order (kma) (Entered: 07/29/2003) |
| 07/28/2003 | 36 | RESPONSE to show cause order filed by defendant Mike Snow (kma) (Entered: 07/29/2003) |
| 07/29/2003 | 37 | ORDERED that the Defendants Nancy Bates, Thomas Hause, Darrell Shivley, and Mike Snow are hereby severed from this action. ( Signed by Judge John E. Steele ) ctc (lap) (Entered: 07/29/2003) |
| 08/04/2003 | 38 | MOTION by Directv, Inc. to strike [34-1] motion to dismiss case (sll) (Entered: 08/06/2003) |
| 08/04/2003 | 39 | MEMORANDUM by Directv, Inc. in support of [38-1] motion to strike [34-1] motion to dismiss case (sll) Modified on 11/28/2003 (Entered: 08/06/2003) |
| 08/19/2003 | 40 | ORDER denying [9-1] motion to dismiss complaint denying [34-1] motion to dismiss case denying [38-1] motion to strike [34-1] motion to dismiss case ( Signed by Judge John E. Steele ) ctc (lap) (Entered: 08/19/2003) |
| 09/29/2003 | 41 | MOTION by Directv, Inc. for summary judgment (lap) (Entered: 09/30/2003) |
| 09/29/2003 | 42 | MEMORANDUM by Directv, Inc. in support of [41-1] motion for summary judgment (lap) (Entered: 09/30/2003) |
| 09/30/2003 | 43 | SUMMRY JUDGMENT NOTICE (lap) (Entered: 09/30/2003) |
| 10/07/2003 | 44 | ORDER directing the Clerk to strike the case management report ( Signed by Magistrate Judge Sheri P. Chappell ) ctc (lap) (Entered: 10/07/2003) |
| 11/26/2003 | 45 | MOTION by Directv, Inc. for issuance of order to show cause referred to Magistrate Judge Sheri P. Chappell. Proposed order attached. (drn) Modified on 12/02/2003 (Entered: 11/28/2003) |
| 11/26/2003 | 46 | AFFIDAVIT of Michael T. Sheridan, Esq. by Directv, Inc. Re: [46-1] motion for issuance of order to show cause. (drn) Modified on 12/02/2003 (Entered: 11/28/2003) |
| 12/11/2003 | 47 | ORDER TO SHOW cause for failure to comply : Response due on 12/22/03 for Gwen Kim Arnold ( Signed by Magistrate Judge Sheri P. Chappell ) ctc (lap) (Entered: 12/11/2003) |

| 12/22/2003 | 48 | RESPONSE to show cause order filed by defendant Gwen Kim Arnold (lap) (Entered: 12/23/2003) |
|---|---|---|
| 12/29/2003 | 49 | ORDER, the Clerk is directed to forward a case management report to the defendant. (Signed by Magistrate Judge Sheri P. Chappell ) ctc (lap) (Entered: 12/29/2003) |
| 02/06/2004 | 50 | ORDER TO SHOW cause for failure to comply: Show Cause Hearing set for 10:00 2/13/04 for Gwen Kim Arnold, for Mike Snow, for Darrell Shivley, for Thomas Hauser, for Nancy Bates, for Directv, Inc. Scheduled for Judge John E. Steele ( Signed by Judge John E. Steele ) ctc (lap) (Entered: 02/06/2004) |
| 02/10/2004 | 51 | MOTION by Directv, Inc. to appear telephonically (lap) (Entered: 02/10/2004) |
| 02/10/2004 | 52 | ORDER denying [51-1] motion to appear telephonically ( Signed by Judge John E. Steele ) ctc (lap) (Entered: 02/10/2004) |
| 02/13/2004 | 53 | CASE MANAGEMENT REPORT (lap) (Entered: 02/13/2004) |
| 02/13/2004 | 54 | MINUTE ENTRY: Contempt Hearing held on 02/13/04 before Judge John E. Steele Court Reporter: NMRS-Patsy Coleman (lap) (Entered: 02/13/2004) |
| 02/17/2004 | 55 | CASE MANAGEMENT AND SCHEDULING ORDER setting Joining of parties, amending of pleadings on 3/13/04 ; Discovery cutoff 6/7/04 ; dispositive motion filing deadline for 8/30/04 Pretrial statement due on or before 7/30/04 ; Pretrial conference for 10:30 9/20/04 ; Jury trial set for 10/4/04 ; Scheduled for Judge John E. Steele ( signed by Magistrate Judge Sheri P. Chappell ) ctc (lap) (Entered: 02/18/2004) |
| 03/01/2004 | 56 | STIPULATION of dismissal by Directv, Inc., Gwen Kim Arnold (lap) (Entered: 03/02/2004) |
| 03/08/2004 | 57 | ORDER that this case is dismissed with prejudice; mooting [41-1] motion for summary judgment ( Signed by Judge John E. Steele ) ctc (sll) (Entered: 03/09/2004) |
| 03/09/2004 | 58 | JUDGMENT . Civil appeals checklist mailed. ( Signed by Deputy Clerk ) ctc (lap) (Entered: 03/09/2004) |
| 03/09/2004 | | CASE CLOSED. (lap) (Entered: 04/29/2004) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 12/16/2004 10:16:08 | | | |
| **PACER Login:** | sn0012 | **Client Code:** | 30016670-0044 |
| **Description:** | Docket Report | **Search Criteria:** | 2:03-cv-00167-JES |
| **Billable Pages:** | 3 | **Cost:** | 0.21 |

# EXHIBIT B

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DIRECTV, Inc. a California Corporation,

Plaintiff,

vs.                     Case No.  2:03-cv-167-FtM-29SPC

GWEN KIM ARNOLD, NANCY BATES, THOMAS HAUSER, DARRELL SHIVLEY, and, MIKE SNOW,

Defendants.

_____/

### ORDER

On July 11, 2003, the Court issued an Order (Doc. #31) to show cause why the case should not be dismissed as to defendants Nancy Bates, Thomas Hauser, Darrell Shivley, and Mike Snow for improper joinder.  On July 18, 2003, plaintiff filed a Response to Sua Sponte Order to Show Cause (Doc. #33) indicating no objection to a severance and asking that the Court allow 30 days to pay the filing fees.

Accordingly, it is now

**ORDERED:**

1.  Defendants Nancy Bates, Thomas Hauser, Darrell Shivley, and Mike Snow are hereby **severed** from this action.  The Clerk is directed to open a separate case for the claims against each defendant and to place copies of the documents applicable to each defendant in his or her respective file.

37

2. The Clerk is directed to advise the parties of the new case numbers and plaintiff shall have **THIRTY (30) DAYS** from the date of this Order to pay the filing fee for each of the new cases.

3. Failure to pay the filing fee as directed shall result in a dismissal of the new case(s) for failure to prosecute without further notice.

**DONE AND ORDERED** at Fort Myers, Florida, this $29th$ day of July, 2003.

_____
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies:
United States Magistrate Judge
Counsel of record
DCCD
DCLC

-2-

Date Printed: 07/29/2003

Notice sent to: *[handwritten initials]*

_____ Scott C. Roberts, Esq.
Stump, Storey, Callahan & Dietrich, P.A.
37 N. Orange Ave., Suite 200
P.O. Box 3388
Orlando, FL  32802-3388

2:03-cv-00167    lap

_____ Michael T. Sheridan, Esq.
Stump, Storey, Callahan & Dietrich, P.A.
37 N. Orange Ave., Suite 200
P.O. Box 3388
Orlando, FL  32802-3388

2:03-cv-00167    lap

_____ Gwen Kim Arnold
1230 Village Lakes Blvd. Apt. 306
Lehigh Acres, FL  33936

2:03-cv-00167    lap

_____ Mike Snow
1139 SE 29 St.
Cape Coral, FL  33904

2:03-cv-00167    lap

# EXHIBIT C

DIRECTV, INC., a California
corporation,

        Plaintiff,

vs.                     Case No.  2:03-cv-394-FtM-29SPC

MIKE SNOW,

        Defendant.

_____/

**ORDER**

This cause is before the Court on plaintiff's Motion for Voluntary Dismissal of Action (Doc. #62), filed August 3, 2004, and plaintiff's Amended and Unopposed Motion for Voluntary Dismissal of Action (Doc. #63), filed on August 4, 2004. Plaintiff seeks a voluntary dismissal without prejudice and certifies that defendant has consented to the voluntary dismissal.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. Plaintiff's Motion for Voluntary Dismissal of Action (Doc. #62) is **DENIED** as moot.

2. Plaintiff's Amended and Unopposed Motion for Voluntary Dismissal of Action (Doc. #63) is **GRANTED**. Pursuant to Fed. R. Civ. P. 41(a)(1), this action is **DISMISSED** without prejudice. The Clerk of the Court is directed to enter a separate judgment

pursuant to Rule 58 of the Federal Rules of Civil Procedure dismissing the case without prejudice.

2. The August 3, 2004, Order (Doc. #61) remains in full force and effect. Defendant shall show cause by August 13, 2004, regarding the award of sanctions unless the Court is otherwise notified that the voluntary dismissal includes the award of sanctions.

3. The Clerk is further **directed** to terminate all previously scheduled deadlines and close the file.

**DONE AND ENTERED** at Fort Myers, Florida, this ___4th___ day of August, 2004.

_John E. Steele_
**JOHN E. STEELE**
**United States District Judge**

Copies to:
Hon. Sheri Polster Chappell
DCCD

-2-

# EXHIBIT D

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHAEL SNOW,

    Plaintiff,

v.                    CASE NO.: 2:04-cv-00515-FtM-33SPC

DIRECTV, INC., a California Corporation;
STUMP, STOREY, CALLAHAN,    **AFFIDAVIT OF SCOTT WILSDON IN**
DIETRICH & SPEARS, P.A., a Florida    **SUPPORT OF DEFENDANT**
Professional Association; YARMUTH,    **YARMUTH WILSDON & CALFO**
WILSDON & CALFO, PLLC, a    **PLLC'S MOTION TO DISMISS**
Washington Professional Limited Liability    **PURSUANT TO FEDERAL RULE OF**
Company; and JOHN DOES 1-25,    **CIVIL PROCEDURE 12(b)(2)**

    Defendants.
_____/

    Personally appeared before me is Scott Wilsdon, who, after being first duly sworn, deposes and states as follows:

    1.    I am over eighteen (18) years of age, of sound mind, capable of making this Affidavit, and the facts stated in this affidavit are within my personal knowledge and are true and correct.

    2.    I am a partner at the law firm of Yarmuth Wilsdon & Calfo PLLC ("Yarmuth") in Seattle, Washington, where I have worked since 1995. In addition to representing Yarmuth's clients in legal matters, I have also been involved in the day-to-day management of the firm. As such, I am familiar with Yarmuth's organizational structure, its corporate status, the clients it represents and, generally, the revenues the firm generates from those clients.

3.     Yarmuth is a Washington Professional Limited Liability Company with its principal place of business and only office in Seattle, Washington. Yarmuth is comprised of eighteen lawyers, as well as legal assistants, secretaries and other staff.

4.     Yarmuth's lawyers provide comprehensive legal services to individuals and corporate clients throughout the United States.  The majority of Yarmuth's clients are, however, located in Washington, with California and Oregon ranking second and third, respectively.  Yarmuth has only a few clients based in other states.

5.     DIRECTV is a California corporation with its principal place of business in California.  Yarmuth has performed legal services for DIRECTV since 1995.  Those services have focused primarily on assisting DIRECTV in investigating and pursuing litigation against individuals and corporations that are engaged in "pirating" DIRECTV's satellite television signal.

6.     As part of Yarmuth's representation of DIRECTV, Yarmuth's attorneys and staff investigate suspected "pirates" by visiting Internet websites that we know to relate or be dedicated to DIRECTV piracy.  These websites often sell devices and/or software purporting to enable purchasers to obtain DIRECTV's television signal for free.  Other such sites provide visitors with "message boards" or "chat rooms" in which members discuss DIRECTV piracy.

7.     Since the firm's inception, Yarmuth has represented DIRECTV in three anti-piracy cases pending in Florida: *DIRECTV, Inc. v. William W. Duke*, No. 6:03-CV-556-ORL-31-JGG (Middle District of Florida, Orlando Division); *DIRECTV, Inc. v. Charles Moscoe, et al.*, No. 6:03-CV-526-ORL-19-DAB (Middle District of Florida, Orlando Division); and *DIRECTV, Inc., et al. v. Eduardo Karam, et al.*, No. 04-21572-

CIV-GOLD/SIMONTON (Southern District of Florida, Miami Division). In each of these matters I was admitted into the respective courts *pro hac vice*, and worked with local counsel retained by DIRECTV. One Yarmuth associate was also admitted *pro hac vice* into the *Moscoe* and *Karam* matters. My associates and I traveled to Florida a total of three or four times in connection with those litigations. Two of these litigations ended in 2003 and 2004, respectively, while the third remains pending.

8. Additionally, in 2001 and 2002 Yarmuth engaged in written, oral and electronic (email) communications with an unknown number of suspected "pirates" on DIRECTV's behalf in an effort to settle prospective cases prior to initiating litigation. No Yarmuth attorney or staff member was ever physically present in Florida in connection with these negotiations.

9. Yarmuth attorneys have represented four Florida-based clients in the firm's history. Each of these four clients was referred to Yarmuth without any solicitation by Yarmuth. Yarmuth's representation of three of the four clients concluded before June 2004 and was at all times limited to specific cases pending in Washington courts. Only the fourth representation is still ongoing, in a pre-litigation posture, and relates exclusively to events taking place in Washington.

10. Yarmuth has never represented any Florida clients in matters pending in Florida courts, and the firm's attorneys have never traveled to Florida in connection with their representation of any Florida clients.

11. Yarmuth has never maintained any physical presence in Florida. Yarmuth has never had an office, telephone listing, mailing address, or agent for service of process in Florida. Yarmuth has never maintained any property or other assets in Florida, and has

3

never held a bank account in the State. No Yarmuth partners or associates have been members of the Bar of Florida or residents of Florida during the time of their employment with Yarmuth.

12.    Yarmuth has never solicited any clients in Florida including by directing advertisements into Florida, or by engaging in "client pitches" to Florida companies or individuals.

13. Yarmuth    has generated substantially less than one percent of its overall revenues from its combined representation of its Florida clients and of DIRECTV in Florida actions.

_____
Scott Wilsdon

Subscribed and sworn to before me this
16th day of _December_ , 2004.


_Nancy Jean Shaulis_
Notary Public
My Commission Expires: _8-1-07_



# EXHIBIT E

Page 1 of 2

Globat.com - 2500MB Web Space, 2500 Email Accounts, 75Gig Transfer $7.95/mo.

# globat.com
## WEB HOSTING MADE EASY®

HOME | ABOUT US | CONTACT US | SITEMAP | CAREER | LOGIN

CALL TO ORDER: (877) 2-GLOBAT · Chat

HOSTING PLANS | ORDERING | TESTIMONIALS | AFFILIATES | SUPPORT | OUR NETWORK | NEWS

**NETWORK STATUS**

⁜ View Network Status
⁜ B²

⁜ **Introduction**
⁜ Technical Specification

Existing Customers: View Your Network Status Here

⁜ Datacenter Tour





## Join the Web Hosting Revolution™

Included with all new Globat accounts.





**B² raises the bar on how websites are hosted.**

*Pronunciation: B² can be pronounced as b squared (skwâr).*

Globat's new B² hosting platform features the redundancy and backup found only at top-level, commercial Data Centers. B² is capable of distributing various areas and functions of your website across multiple servers; each one manages a different application for optimum performance. Other hosting companies run numerous applications on one server, thus increasing the likelihood of failure.

Our B² system features Foundry Switches, Network Appliance Raid 4 Filers and on-line backup machines with additional disc drives, ensuring that even if one part of our hosting network goes down your website continues to operate without loss of any data.

In addition, we employ Nortel Networks Alteon Load Balancers as virtual "air traffic controllers." Their function is to direct and distribute incoming traffic to promote your application's performance and reliability. Should a server ever fail or experience an unusually heavy load, our Alteon Load Balancers automatically shift traffic on to backup servers and keep your site running smoothly. B² is also comprised of dedicated mySQL servers that are configured with performance-optimized redundant RAID SCSI

storage for a best-in-class solution.

The network redundancy of the $B^2$ platform is partially achieved through the utilization of two separate Data Centers that are on different backbones for additional protection. Our primary equipment is housed in a cage at our main Data Center, Equinix, located in downtown Los Angeles, California and is the same one used by Google, Yahoo and IBM. Our Tier-1 providers include Level (3), Verio and Mzima Networks and operate over private peering networks to avoid overcrowded public exchanges. We also maintain a presence at a second Data Center in Marina del Rey, California exclusively for secondary DNS and email server backup. This facility uses AT&T and Time/Warner for connectivity.

$B^2$ lets you focus on your business, not your web site's uptime.

Copyright © 2004 Globat, LLC. All rights reserved. Usage of this site constitutes acceptance of our privacy policy, terms & conditions.

# EXHIBIT F

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHAEL SNOW,

      Plaintiff,

v.                                           CASE NO.: 2:04-cv-00515-FtM-33SPC

DIRECTV, INC., a California Corporation;     **AFFIDAVIT OF MICHAEL HOUCK**
STUMP, STOREY, CALLAHAN,                     **IN SUPPORT OF DEFENDANT**
DIETRICH & SPEARS, P.A., a Florida          **YARMUTH WILSDON & CALFO**
Professional Association; YARMUTH,           **PLLC'S MOTION TO DISMISS**
WILSDON & CALFO, PLLC, a                     **PURSUANT TO FEDERAL RULE OF**
Washington Professional Limited Liability    **CIVIL PROCEDURE 12(b)(2)**
Company; and JOHN DOES 1-25,

      Defendants.

Personally appeared before me is Michael Houck, who, after being first duly sworn, deposes and states as follows:

    1.    I am over eighteen (18) years of age, of sound mind, capable of making this Affidavit, and the facts stated in this affidavit are within my personal knowledge and are true and correct.

    2.    I am a legal assistant at the law firm of Yarmuth Wilsdon & Calfo PLLC ("Yarmuth") in Seattle, Washington. Among my responsibilities as a legal assistant is to conduct computer-based investigations into individuals and corporations that are believed to be engaged in "pirating" DIRECTV's satellite television signal.

    3.    In or about early-June 2004, I visited the website located at 222.stop-corporate-extortion.com.

4.    At the time I visited this website, I was physically located in my office in Seattle, Washington.  I was not informed, nor did I believe, that the website I was visiting was hosted in Florida.

_Michael Houck_ (signature)

Michael Houck

Subscribed and sworn to before me this
16th day of _December_, 2004.

_Nancy Jean Shaulis_ (signature)
Notary Public
My Commission Expires:  8-1-07

NANCY J. SHAULIS
COMMISSION EXPIRES
NOTARY PUBLIC
8-1-07
STATE OF WASHINGTON

2